# UNITED STATES v. LOVKNIT MFG. CO., Inc., et al.

No. 13361.

United States Court of Appeals
Fifth Circuit.

June 1, 1951.

Morton Liftin, Joseph Kovner, Attorney, Dept. of Justice, Washington, D. C., Frank B. Potter, U. S. Atty., O. Morris Harrell, Asst. U. S. Atty., Dallas, Tex., for appellant.

Harry I. Freedman, Dallas, Tex., Welborn B. Cody (as amicus curiæ), Atlanta, Ga., Franklin E. Spafford, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and SIBLEY and STRUM, Circuit Judges.

SIBLEY, Circuit Judge.

The suit in the District Court was brought by the United States expressly under the Walsh-Healey Act, 41 U.S.C.A. §§ 35 to 45, against Lovknit Manufacturing Company, Inc., and two of its officers to recover for breaches of 12 contracts for the manufacture of garments and mosquito bars, which contracts were made and goods delivered, the first in 1942 and the last in 1945. The breaches alleged consisted in the failure to pay proper overtime wages to numerous employees, and in the employment of four persons who were too young, by reason of all which a total of $6796.90 was claimed to be due to the United States as liquidated damages. It was alleged that on January 8, 1947, the Secretary of Labor had formulated a complaint specifying these claims in detail and appointed a Hearing Examiner under Section 5 of the Act, 41 U.S.C.A. § 39, who had rendered a decision on December 29, 1947 from which an appeal was taken to the Administrator of the Wage and Hour Public Contracts Division of the Department of Labor who, on March 21, 1949, affirmed the findings of the Hearing Examiner. Suit was filed by the direction of the Attorney General on December 28, 1949.

One of the defenses pleaded was that the suit is barred under the limitation provisions of the act of May 14, 1947 called the Portal to Portal Act, 29 U.S.C.A. § 255. At the trial the proceedings before the Hearing Examiner and the Administrator were put in evidence, and a motion for summary judgment made. The court held the suit barred and also that the merits of the claim were with the defendants. This appeal followed. We find it necessary to consider only the question of bar by limitation.

The words of the Act of May 14, 1947, 29 U.S.C.A., § 255, so far as they need be quoted are: "*Any action* commenced on or after the date of the enactment of this Act to enforce *any cause of action* for unpaid minimum wages, unpaid overtime compensation, or *liquidated damages,* under the Fair Labor Standards Act of 1938, as amended, *the Walsh-Healey Act,* or the Bacon-Davis Act—

"(a) if the cause of action accrues on or after the date of the enactment of this Act—may be commenced within two years after *the cause of action accrued,* and *every such action* shall be *forever barred* unless commenced within two years after the cause of action accrued." (Emphasis added.)

By Paragraph (b) a two year limitation is fixed in similar words as to causes of action accruing *before* the enactment of the Act, unless an applicable State statute

fixes a shorter time, in which case the shorter time applies. Paragraph (c) allows 120 days after the date of enactment to file actions falling under Paragraph (b) unless when commenced they are already barred by a State statute. The present suit is clearly one "to enforce causes of action * * * for liquidated damages under * * * the Walsh-Healey Act." The date of accrual of the causes of action is disputed, the United States saying that they accrued only after the investigation and findings of the Hearing Examiner and Administrator ended on March 21, 1949, and that the suit was brought within two years thereafter on December 28, 1949 and was timely. Appellees say that the causes of action accrued as to each contract on its breach and not later than the completion of that contract, and all accrued more than four years before suit. No State statute is brought forward as applicable. Further the United States contends that the limitation Act does not apply to the sovereign at all because not named in it.

 1. We consider the last question first, and have no doubt that the Act applies. Congress can and often has fixed time limitations applying to the United States without specially so saying. Note those affecting taxes, the very life of the government. There is no need to name the United States in a statute if the intent to affect the United States is clear otherwise, as from the subject matter dealt with. A general statute ordinarily is applied to citizens only and not to Government, and this would perhaps have been true of this Act except for the fact that all causes of action under the Walsh-Healey Act are named expressly and that Act relates only to government business; and as we shall see, the United States alone has causes of action under it. Particular mention of the Walsh-Healey Act in the limitation Act in effect writes the limitation into the Walsh-Healey Act as a part of it. *"Any* cause of action" under that Act is expressly limited and they all are about public contracts with the United States: the whole is Government legislation. The Government is clearly intended to be affected.

2. Let us look closely at the Walsh-Healey Act, 41 U.S.C.A. §§ 35–45, to see what it deals with and what rights it defines and in whom they are vested. It was enacted in 1936 before the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The first section requires that any contract made by an agency of the United States for manufacture or furnishing of materials and equipment in excess of $10,000 shall contain certain stipulations, including one for the payment of wages on a scale to be determined by the Secretary of Labor, and one for the restriction of work hours to eight in any day and forty in any week; and that no male under sixteen years or female under eighteen years of age, and no convict labor, will be employed in the work. We do not inquire whether these stipulations must be actually expressed in the contract or whether the statute writes them in, nor whether it is shown that they were actually in these contracts, the contracts not being in the record. No issue about this was made in the hearing before the examiner and we assume they contained what the Act required. The claim investigated there and the suit here allege that there were specified "breaches of the contract" and the suit is one expressly for breaches of the contracts and for the liquidated damages fixed in the next Section, 41 U.S.C.A. § 36: *"Any* breach or violation of any of the representations and stipulations *in any contract* for the purposes set forth in section 35 * * * shall render the party responsible therefor *liable to the United States of America* for liquidated damages" (which alone are claimed here), at ten dollars per day as to each person misemployed or worked overtime, besides other damages named. A right also is given to cancel the contract and procure what was contracted for elsewhere at the contractor's cost. "Any sums of money due to the United States of America by reason of any violation of any of the representations and stipulations of said contract set forth in section 35 of this title may *be withheld* from any amounts due on any such contracts or may *be recovered in suits* brought in the name of the United States of America by the Attorney

General thereof." There is a further provision that sums *recovered or withheld* as rebates or for underpayment of wages shall be held in a special deposit account and paid by the Secretary of Labor directly to the employees who have been paid less than minimum rates of pay as set forth in the contract and on whose account such sums were withheld or recovered, if claimed by them within one year.

 It is clear to us that no one may *sue* for a breach of these contracts in any respect except the United States through the Attorney General. The contracts are public contracts to which only the United States and the contractors are parties. No one can interfere in court for a breach except the Attorney General. To permit interference by others might impede the public business. The Section 36 does permit the United States to retain or recover rebates and underpayments of wages which are a breach of the public contract, and requires this money to be paid to the employees concerned, if they ask for it within a year, but this does give them a right to sue anybody. This benevolent provision is the only relief the Congress provides for an employee *under this Act.* The employee can have no cause of action for unpaid wages under this Act. In the present case only a cause of action for liquidated damages is asserted, and in such damages no one but the United States can have any interest in any way. We know of no case in which an employee has recovered under the Walsh-Healey Act, though we are told that some members of Congress in considering the Portal to Portal Act said they thought employees might. We find a holding of a lower court that an employee cannot sue under the Act in Greenstein v. Pan American Awnings, Inc., 185 Misc. 429, 57 N.Y.S.2d 178.

We believe this the true view. This being so, the broad language limiting the time of suit on "any action * * * to enforce any cause of action * * * under * * * the Walsh-Healey Act" could refer to no action but those authorized in the name of the United States to recover money due to the United States. For this reason, as well as the all-comprehending language used and the fact that the subject matter of the Walsh-Healey Act is only public contracts and not private rights, the intent to limit suits by the United States is very clear. We note that in Perkins v. Lukens Steel Co., 310 U.S. 113, page 128, 60 S.Ct. 869, 877, 84 L.Ed. 1108, where the constitutionality of the Walsh-Healey Act was determined, the court said that by it the United States was only regulating its own business and not labor relations: "The Act does not represent an exercise by Congress of regulatory power over private business or employment. In this legislation Congress did no more than instruct its agents who were selected and granted final authority to fix the terms and conditions under which the Government will permit goods to be sold to it."

 3. The next question is as to when the causes of action sued on accrued. In common language that means, when did all the facts exist, whether known or not, which would authorize a suit. Actions for a *fraud* do not ordinarily accrue till the fraud is discovered or should with diligence have been discovered. And against a cause of action which is *fraudulently concealed* from the plaintiff time does not run during the concealment; but neither is this case. Records were kept by the contractor of employment. There is no evidence that anything was concealed by them. All that was known when the suit was filed was actually known in substance when the detailed charge was formulated on January 8, 1947. The hearing was held on May 21 and 22, about a week after the Portal to Portal Act took effect, and there was no difficulty in proving all the facts, the evidence being in small compass. Everything that was proved had happened by the end of 1945, when the last contract was completed. Under ordinary rules the causes of action had accrued and could have been sued on at any time after the default occurred. Certainly each contract was subject to full inspection, and to suit if in default, at the time it was completed. When the Portal to Portal Act was passed on May 14, 1947, there were allowed still 120 days to sue (absent a bar by State law). Instead the administrative hearing was

continued but no action was brought till December 28, 1949, two years and seven months and two weeks after its passage.

4. The excuse offered is the administrative hearing. The argument made is that the causes of action had not accrued till there was a completion of it and "findings of fact" had been made under the provision of the Walsh-Healey Act authorizing them, 41 U.S.C.A. § 39: "which * * * shall be conclusive upon all agencies of the United States, and if supported by the preponderance of the evidence, shall be conclusive in any court of the United States". Stated otherwise, the assertion is that such hearing and findings are a prerequisite to a suit by the Attorney General. We do not agree. The Act nowhere so conditions his suit. Many breaches of contract can occur in which a hearing and a finding of facts would be of no help but a cause of delay. Not only does the Act in plain language give the Attorney General alone the authority to sue upon a breach but the authority of the Secretary to get findings in Section 38 is only that he *"shall have power"*, and in Section 39, "Upon his own motion or on application of any person affected [he or his representative] *shall have the power* to hold hearings". If he gets fact findings that are favorable they are not the basis of the suit, but are only evidence that may be used in it. If not full, they may be supplemented by other evidence. If the suit can be proven by witnesses in court no administrative hearing is necessary for its trial, much less for its institution. If a suit is filed, a hearing can be had pending it if the Secretary wishes, and the findings used in the trial. This machinery is not a prerequisite to the Attorney General's suit, but may be a help in trying it, and a saving of court time. Here, on the passage of the Portal to Portal Act, the suit, if not already barred, might have been filed in 120 days and the administrative hearing hurried up. Under the view of counsel for appellant, notwithstanding the strong limiting Act, there could be an indefinite postponement of final settlement of these and numberless other public contracts, till the Secretary after any lapse of time and with no speed at all should see fit to start a hearing, and his examiners to decide it, before the Attorney General in any case could sue. The Portal to Portal limitation as to the Walsh-Healey actions would be entirely nullified.

Several district courts have held that a fact finding is prerequisite to suit, but none has been affirmed on that point. Several decisions in the Supreme Court are put forward as persuasive that limitation does not begin to run till after administrative hearing and finding, but we think them not decisive or analogous here. Woods v. Stone, 333 U.S. 472, 68 S.Ct. 624, 92 L. Ed. 815, had to do with the recovery of excess rents under rent control, where the administrator had retroactively reduced the rent and ordered the landlord to refund the excess stated and was sued for not doing so. The holding was that no cause of action accrued and the limitation did not begin to run till the refusal or failure to comply with the order of refund. Neither the existence of over charge nor the amount of it could be known till the order of refund was made. It was the thing sued on. The court said, 333 U.S. at page 477, 68 S.Ct. at page 626, 92 L.Ed. 815: "The duty to refund was created and measured by the refund order and was not breached until that order was disobeyed." Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602, following Fisher v. Whiton, 317 U.S. 217, 63 S.Ct. 175, 87 L.Ed. 223, and Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605, hold that limitation of suits to enforce the Comptroller's assessments against stockholders of a failed national bank does not begin to run until the assessment has been made with a date fixed for payment and there is a failure to pay on that date. Here again there is no breach of duty till the assessment fixes the amount of liability and the time has passed to discharge it. The suit is on the assessment.

Under the Walsh-Healey Act the suit is on the contract for a breach of it and not on anybody's order. If an administrative hearing and finding of facts is had no order or judgment is issued, or can be sued on. The facts found are merely established as true when the findings are offered in a Court of the United States. The suit,

whether filed before or after the findings, is on the contract and its breach. We reiterate that if there are findings offered at the trial and they do not fully cover everything necessary, they can be supplemented by other evidence. In this case it has been questioned whether the findings establish that the contracts do contain the stipulations claimed to have been breached. We would have no doubt that the contracts could be received in evidence to supplement the findings. We equally do not doubt that if it be considered that the entire case may be conveniently tried without any administrative hearing, that can be done. And there is no reason why a suit about to be barred cannot be filed at once by the Attorney General, and the Secretary if he desires can seek for fact findings pending the suit to shorten and facilitate the trial. We hold that the Secretary's power to seek findings of fact for use in court does not prevent the filing of a suit by the Attorney General unless and until the Secretary's power has been exercised and findings obtained.

We are, therefore, of opinion that these causes of action under the Walsh-Healey Act accrued before the date of the Portal to Portal Act, that the United States is affected by the limitation, that the failure of the Secretary to have an earlier hearing and findings if he wished them is no excuse for delaying the suit, and that it was filed too late and was "forever barred" in the emphatic language of the limiting Act.

Judgment affirmed.