## UNEXCELLED CHEMICAL CORP. *v.*
## UNITED STATES.

No. 293. Argued January 9, 1953.—Decided March 9, 1953.

*George Morris Fay* argued the cause for petitioner. With him on the brief were *John P. Burke* and *Edward L. Carey* for petitioner.

*James R. Browning* argued the cause for the United States. With him on the brief were *Solicitor General Cummings, Assistant Attorney General Baldridge, Paul A. Sweeney* and *Benjamin Forman.*

60

Mr. Justice Douglas delivered the opinion of the Court.

This is an action brought by the United States to recover liquidated damages under the Walsh-Healey Act. 49 Stat. 2036, as amended, 41 U. S. C. § 35 *et seq.* That Act provides that a contractor furnishing the Government materials, supplies, etc., in an amount exceeding $10,000 must meet specified labor standards. Thus, child labor and convict labor are prohibited, § 1 (d), under the sanction of $10 a day for each day any minor or convict is employed plus any underpayment of wages, payable as liquidated damages. § 2. These sums of money owing the United States may be withheld from amounts due on the contracts or may be recovered in suits brought in the name of the United States by the Attorney General. § 2. The Secretary of Labor administers the Act (see § 4; *Endicott Johnson Corp.* v. *Perkins,* 317 U. S. 501, 507), making investigations and findings (§ 4) and issuing complaints and holding hearings. § 5.

On April 17, 1947, the Secretary of Labor issued a complaint charging petitioner with having knowingly employed child labor during the years 1942–1945 in violation of the Act. On February 25, 1949, a Hearing Examiner made a decision in which he found that petitioner had knowingly employed child labor in violation of the Act and was indebted to the United States in the sum of $15,600 as liquidated damages. Under the Rules of Practice of the Department of Labor that decision became final at the end of the twenty-day period within which petitioner had an opportunity to petition the Chief Hearing Examiner for review.

Nearly a year later—January 27, 1950—this action was brought. The answer tendered as a defense the two-year statute of limitations contained in § 6 of the Portal-to-Portal Act of 1947, 61 Stat. 84, 87, 29 U. S. C. (Supp. V) § 255. Both parties moved for summary judgment.

The District Court granted petitioner's motion, holding that the cause of action arose when petitioner violated the statute and that the two-year statute of limitations began to run from the date. 99 F. Supp. 155. The Court of Appeals reversed, 196 F. 2d 264, holding that actions brought by the United States to enforce the child labor provisions of the Walsh-Healey Act are not barred by the two-year limitation period of § 6 of the Portal-to-Portal Act. The case is here on certiorari because of a conflict between that decision and *Lance, Inc.* v. *United States,* 190 F. 2d 204, and *United States* v. *Lovknit Mfg. Co.,* 189 F. 2d 454, from the Courts of Appeals of the Fourth and Fifth Circuits respectively.

Section 6 of the Portal-to-Portal Act provides a two-year statute of limitations for any action commenced on or after the date of the Act "to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act." Section 6 also provides that "every such action shall be forever barred unless commenced within two years after the cause of action accrued."

The Portal-to-Portal Act was enacted to remedy what were deemed to be some harsh results of our decision in *Anderson* v. *Mt. Clemens Pottery Co.,* 328 U. S. 680, which held that time necessarily spent by employees walking to work on the employer's premises and in preliminary activities after arriving at their places of work was working time within the scope of the Fair Labor Standards Act. 52 Stat. 1060, 63 Stat. 910, 29 U. S. C. § 201 *et seq.* The suits instituted by employees, the amounts claimed, and their threatened impact on business caused Congress to act. See H. R. Rep. No. 71, 80th Cong., 1st Sess.; S. Rep. No. 48, 80th Cong., 1st Sess. The consequences feared from *Anderson* v. *Mt.*

*Clemens Pottery Co., supra,* were summarized in § 1 (a) of the Portal-to-Portal Act.[1] None of these referred to the liquidated damage provisions of the Walsh-Healey Act. None in fact referred to its child labor provisions.

---

[1] "SECTION 1. (a) The Congress hereby finds that the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur."

That is the start of the argument made by respondent and adopted by the Court of Appeals to the effect that Congress in the Portal-to-Portal Act had no intention to legislate with respect to the child labor provisions of the Walsh-Healey Act but had in mind only possible suits which employees might bring for unpaid minimum wages and overtime.

We do not stop to lay out the entire legislative history of the Portal-to-Portal Act. For the words Congress used in § 6 are too precise for extended argument. Three causes of action are covered—claims for "unpaid minimum wages," claims for "unpaid overtime compensation," and claims for "liquidated damages" under three Acts, including the Walsh-Healey Act. The only "liquidated damages" collectible under the Walsh-Healey Act are collectible by the United States. That marks a difference between that Act and the Fair Labor Standards Act. For, under the latter, employees may bring suits for double the amount of unpaid wages, plus costs and attorneys' fees. 29 U. S. C. § 216 (b). That is doubtless why § 1 (a) of the Portal-to-Portal Act, after summarizing the great burden on employers of the pending employee claims, states that "all of the results which have arisen or may arise under the Fair Labor Standards Act of 1938 . . . may (except as to liability for liquidated damages) arise with respect to the Walsh-Healey" Act and that "it is, therefore, in the national public interest . . . that this Act shall apply to the Walsh-Healey Act . . . ." That statement does no more than emphasize the difference of the problem of liquidated damages under the two Acts. The fact remains that the Portal-to-Portal Act treats claims for "liquidated damages" under the Walsh-Healey Act precisely the same as it does claims for "liquidated damages" under the Fair Labor Standards Act, even though the former are enforced exclusively by the Government, the latter by the employees. Perhaps that does not make

for an harmonious whole. Perhaps Congress miscon-
ceived the problems under the Walsh-Healey Act.[2] How-
ever that may be, the present cause of action seems to be
precisely described by and expressly included in the words
"liquidated damages under the . . . Walsh-Healey Act."
If this cause of action is not covered by that language, ap-
parently none other is.[3] It is not for us then to try to
avoid the conclusion that Congress did not mean what it
said. Arguments of policy are relevant when for example
a statute has an hiatus that must be filled or there are
ambiguities in the legislative language that must be re-
solved. But when Congress, though perhaps mistakenly
or inadvertently, has used language which plainly brings
a subject matter into a statute, its word is final—save for
questions of constitutional power which have not even
been intimated here.

---

[2] See for example H. R. Rep. No. 71, *supra,* p. 5: "The Walsh-
Healey Act also concerns itself in its field with minimum wages and
overtime compensation. The Bacon-Davis Act has provisions relat-
ing to minimum wages and other conditions of employment. These
two acts are therefore affected by the Mount Clemens decision. The
situation described herein as to the Fair Labor Standards Act applies
to that existing under the Walsh-Healey Act and the Bacon-Davis
Act. The same necessity exists there for remedial legislation."

[3] We do not reach the question whether employees have standing
to sue under the Walsh-Healey Act. No provision, however, is made
for their recovery of liquidated damages. The following provision
relates to their rights: "All sums withheld or recovered as deductions,
rebates, refunds, or underpayments of wages shall be held in a special
deposit account and shall be paid, on order of the Secretary of Labor,
directly to the employees who have been paid less than minimum rates
of pay as set forth in such contracts and on whose account such
sums were withheld or recovered: *Provided,* That no claims by em-
ployees for such payments shall be entertained unless made within
one year from the date of actual notice to the contractor of the
withholding or recovery of such sums by the United States of
America." § 2.

Respondent argues that even if this cause of action is subject to the two-year statute of limitations contained in § 6 of the Portal-to-Portal Act; the present suit was timely. The contention is that the cause of action accrues, and the two-year period begins to run, only after it is administratively determined by the Department of Labor that the contractor is liable to the United States for liquidated damages. If that contention is sound, the judgment below must stand, as this suit was begun less than two years after the conclusion of the administrative proceedings.

We take the opposing view. We conclude that "the cause of action accrued," within the meaning of § 6 of the Portal-to-Portal Act, when the minors were employed. That was the violation of the Walsh-Healey Act, giving rise to the liability for liquidated damages. It is true that the administration of the Act is entrusted in large measure to the Secretary of Labor. See *Endicott Johnson Corp.* v. *Perkins, supra.* He has broad investigatory and hearing powers. §§ 4, 5. He has authority to proscribe those who have violated the Act, barring them from government contracts for three years. § 3. Moneys withheld as liquidated damages are placed in a special fund and paid on order of the Secretary of Labor to the employees. § 2. These powers of the Secretary, important as they are in determining the relation between the courts and the administrative branch of government (*Endicott Johnson Corp.* v. *Perkins, supra*), are irrelevant to the narrow question of law that is presented. A cause of action is created when there is a breach of duty owed the plaintiff. It is that breach of duty, not its discovery, that normally is controlling. Section 2 of the Walsh-Healey Act provides that the Attorney General may bring suit to recover moneys owed the United

States.[4] The fact that due deference to the administrative process should make a court hold its hand until the administrative proceedings before the Secretary of Labor have been completed (*Far East Conference* v. *United States*, 342 U. S. 570; *Thompson* v. *Texas Mexican R. Co.*, 328 U. S. 134; *General American Tank Corp.* v. *El Dorado Terminal Co.*, 308 U. S. 422; *United States* v. *Morgan*, 307 U. S. 183) is a matter of judicial administration and of no relevancy here. The statutory liability accrued when the minors were employed. It was from that date that the period of limitations began to run.

This construction, it is said, will prejudice the power of the United States to safeguard the public interest. But if there is prejudice it is the result of the Portal-to-Portal Act which Congress, having made, can refashion.

There is the final argument that the action was, in any event, commenced when the administrative proceedings were initiated. Section 7 of the Portal-to-Portal Act provides that "an action is commenced for the purposes of section 6 . . . on the date when the complaint is filed." It is argued that the issuance of a formal complaint in the administrative proceedings (the customary procedure in Walsh-Healey cases) is the commencement of an action in the statutory sense. Congress, however, when it wrote § 7, was addressing itself to lawsuits in the conventional sense. Commencement of an action by the filing of a complaint has too familiar a history and the purpose of §§ 6 and 7 was too obvious for us to assume that Congress did not mean to use the words in their ordinary sense.                               *Reversed.*

---

[4] Section 2 provides in pertinent part: "Any sums of money due to the United States of America by reason of any violation of any of the representations and stipulations of said contract set forth in section 1 hereof may be withheld from any amounts due on any such contracts or may be recovered in suits brought in the name of the United States of America by the Attorney General thereof."