UNITED STATES of America, Plaintiff-Appellant,

v.

GULF STATES ASPHALT COMPANY, INC., Defendant-Appellee.

No. 72-1749.

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1973.

Rehearing Denied March 16, 1973.

---

Anthony J. P. Farris, U. S. Atty., James R. Gough, B. Stephen Rice, Asst. U. S. Attys., Houston, Tex., Morton Hollander, Chief, Appellate Sec., Alan S. Rosenthal, Thomas G. Wilson, Civil Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

L. G. Clinton, Jr., A. J. Harper, II, Houston, Tex., for defendant-appellee.

Before WISDOM, BELL and COLEMAN, Circuit Judges.

BELL, Circuit Judge.

This is an appeal from a judgment for the defendant, Gulf States Asphalt, in a suit brought by the government seeking damages for alleged violations of the Walsh-Healey Public Contracts Act, 41 U.S.C.A. § 35 et seq. The basis for the suit was that Gulf States failed to pay certain of its employees overtime for work performed under a government contract. The district court ruled for defendant on stipulated facts and issues. We affirm.

I.

Gulf States is a Texas corporation which manufactures asphalt and other petroleum products at plants in South Houston and Beaumont, Texas. In 1967, Gulf States was awarded a government contract for the manufacture and delivery of asphalt products.[1] The contract was subject to the requirements imposed by the Walsh-Healey Act and the regulations issued pursuant thereto. 41 U.S. C.A. § 35; 41 CFR § 50–201.1.

Deliveries under the contract were to be made in 55 gallon steel drums from the Beaumont plant. At the Beaumont plant Gulf States kept a stockpile of 55 gallon steel drums for use in making such deliveries. During the performance of the contract Gulf States purchased new and used drums which were delivered to the Beaumont plant by others. It also purchased drums which were transported from suppliers to its South Houston plant by its own employees. After being reconditioned, some of these drums were transported by its employees to the Beaumont plant where they were put in the stockpile

which was used in fulfilling the requirements of the government contract in issue. The Gulf States' employees who transported these drums to the South Houston plant and between the South Houston and Beaumont plants were not paid overtime wages for their work; hence the controversy.

Contending that these employees should have been paid overtime, the Department of Labor filed an administrative complaint against Gulf States on August 29, 1969. Because the administrative proceedings in the Department of Labor do not toll the statute of limitations and because the Walsh-Healey Act also provides for judicial proceedings to remedy a violation of its provisions, the government on September 19, 1969, filed the action which is the subject matter of this appeal. This action was stayed in 1969 and again in 1970, pending the administrative determination by the Department of Labor. At the time of the second stay, on November 2, 1970, the district court was advised that the administrative proceedings would be completed within 120 days. In May of 1971, the United States informed the district court that the administrative proceedings would not be terminated until the end of that summer. Acting on this information, the district court continued the stay until September 20, 1971, when it learned that the administrative proceedings would not be finished until January of 1972. At this point, two years after the suit had been filed, the district court denied plaintiff's motion for a further continuance and the case subsequently went to trial.[2]

---

1. There are four other contracts in issue. All of these contracts were subject to the Walsh-Healey Act. It was stipulated that the 1967 contract and the determination as to it would control the determinations as to possible Walsh-Healey Act violations under the other contracts. Thus the 1967 contract will be the focus of this opinion.

2. The parallel proceedings are better understood by examining the scheme of the Act.

It attempts to regulate and specify the conditions of employment which are required of government contractors performing work on government contracts in excess of $10,000. Certain specified representations and stipulations must be included in each government contract which is subject to the Walsh-Healey Act. One of these stipulations is that all work in excess of 40 hours per week be compensated at a rate one and one-half times the basic hourly rate, 41 U.S.C. §§ 35(b),

■ At the trial the district judge found that the work performed by Gulf States employees in transporting the drums to the South Houston plant was not activity falling within the coverage of the Walsh-Healey Act. However, the district judge did find that the work of the employees who transported the drums between the South Houston and Beaumont plants was within the coverage of the Act.

Once this determination was made, it was necessary for the district court to reach the issue which forms the primary basis for this appeal, whether the employee activity in question was in any event exempt from the requirements of the Act by virtue of the Secretary's stockpile rule, to be hereinafter discussed. The district court concluded that the stockpile exemption was applicable and this appeal followed.

The United States now advances three arguments. The first is that the district court should have stayed the suit pending the completion of administrative proceedings in the Department of Labor. Second, it is argued that the Gulf States employees who transported the steel drums from the suppliers to the South Houston plant where they were reconditioned before being taken to Beaumont were performing activities within the coverage of the Act. The third contention is that the district court erred in its application of the stockpile rule. Because of our view that the stockpile rule absolved Gulf States,

we reach only the first and third assignments of error.

## II.

■■ In regard to the question of a further stay, it must be noted that the district court stayed the lawsuit for over two years while waiting for the Department of Labor to act. Under 41 U.S.C. A. § 36, the district court had original jurisdiction of the suit and was not required to wait for an administrative determination to be made. In United States v. Winegar, 254 F.2d 693 (10 Cir., 1958), this precise question, whether to wait for an administrative determination or to proceed with the lawsuit under the Act, was discussed by the Tenth Circuit. In holding that the lawsuit could proceed, the court stated:

"Where the action is instituted during the pendency of the administrative proceeding but before the making of findings of fact therein, the question whether the judicial action should be stayed for a reasonable time to await completion of the administrative proceeding is a question addressed to the sound judicial discretion of the court. It may well be that in the ordinary case of that kind, appropriate procedure would be to stay the judicial proceeding for a reasonable time to await the making of administrative findings of fact, but that is a matter committed to the sound judicial discretion of the court." 254 F.2d at 696.

---

40, 41 CFR § 50-201-103. Upon breach of any of the required stipulations or representations a contractor becomes liable to the United States for liquidated damages, which may be obtained on behalf of the underpaid employees in a suit brought by the United States Attorney General. 41 U.S.C. § 36. The Secretary of Labor is also directed to administer the Act and is authorized to conduct administrative hearings to determine whether there have been violations of the representations or stipulations required by the Act. 41 U.S.C. § 39. The Act also provides that findings made by the Secretary of Labor pursuant to a hearing are "conclusive upon all agencies of the Unit-

ed States, and if supported by the preponderance of the evidence, shall be conclusive in any court of the United States." 41 U.S.C. § 39. Thus, the Act provides alternative enforcement procedures, administrative and judicial. The Portal to Portal Act of 1947, 29 U.S.C. § 255, provides for a two year statute of limitations during which the government can bring an action under the Walsh-Healey Act and it is settled that initiation of administrative proceedings does not toll the statute of limitations as far as a judicial proceeding is concerned. Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953).

In the present case the district court waited two years for the Department of Labor to complete the administrative proceedings and we do not feel that the failure of the district court to continue to stay the lawsuit can be termed an abuse of discretion.

Moreover, the principal purpose of a stay would have been to afford the court the benefit of an administrative construction of the stockpile rule. As will be seen, in the narrow confines of the stipulation of facts and issues, the answer to the question presented was one of law based on the construction of the contract and the application thereof to only a single portion of the rule. In addition, the Administrator had previously construed the stockpile rule to the extent that it is drawn in issue in this litigation. See In re Funsten, PC-611, 13 WH Cases 819 (1958).

The district court did not err in denying the stay.

### III.

We come then to the stockpile rule issue. The rule is printed in the margin.[3]

To qualify under the stockpile rule for exemption from coverage, Gulf States must have had a stockpile of drums sufficient to meet the requirements of the government contract at the time of the award of the contract. The contract itself was an indefinite amount requirements contract. It contained a general estimate of the number of drums that the government considered it needed under the contract, 300,000 drums. However, according to the language of the contract, the general estimate was expressly stated not to be binding upon the government.

■ In addition to the general estimate, the contract contained more specific requirements. It provided that: "Delivery is *required* to be made in accordance with the schedule set forth below." The specific delivery schedule provided for delivery of up to 6,000 drums in the first 30 days, between 6,000 and 15,000 drums within 45 days, and for each additional 15,000 drums an additional 15 day period. The parties stipulated that Gulf States Asphalt had

3. Walsh-Healey Public Contracts Act, Rulings and Interpretations No. 3 of the United States Department of Labor, provides in relevant part as follows:

a. Section 24. STOCK ON HAND

(a) A person may fulfill a contract subject to the Public Contracts Act by supplying materials or articles which were manufactured or produced prior to the award of the contract. The Act does not apply retroactively to work performed prior to the award of the contract, but the Act does apply to work performed after the date of the award of the contract on the materials or articles supplied to the Government.

(b) However, when a contractor at the time of the award of a contract has on hand a stock of finished articles, partially finished articles, or raw materials and during the performance of the contract produces additional goods of the same kind which are added to the stockpile and commingled with them so as to be unidentifiable from the existing stock previously on hand, those employees engaged in such additional production during the performance of the contract are

not covered by the Act if all of the following factors are present:

(1) The contractor customarily maintains a stockpile of materials, whether raw, semiprocessed or finished, which is unidentifiable as to the time work was performed on any particular unit in the pile;

(2) Such a stockpile is, at the time of the award and at all times while the contract is in effect, sufficient to fulfill the remaining demands under the Government contract; and

(3) The contract is in fact fulfilled from that very pile.

(c) If these conditions are met, it is not regarded as significant that some unidentifiable part of the goods taken from the pile and used to fill the Government contract was produced after the award of the Government contract. On the other hand, if the goods added to the stock are identifiable as having been produced after the date of the award of the Government contract and such goods are furnished to the Government, employees engaged in their production would be covered by the Act.

\* \* \* \* \*

a sufficient number of drums in stock during the duration of the contract to meet the specified delivery schedule but not the general estimate of 300,000 drums. In order to avail itself of the stockpile exemption, the government contractor must have a stockpile which is "at the time of the award and at all times while the contract is in effect, sufficient to fulfill the *remaining demands*" of the contract, Rulings and Interpretations No. 3, § 24(b), fn. 3, supra. Thus the issue before the district court was whether the stockpile maintained by Gulf States was sufficient to meet the *"remaining demands"* of the contract. The district court answered in the affirmative. The district court arrived at this conclusion by construing the contract against the drafter, the government, and holding that the specific delivery schedule controlled over the general estimate.

■ According to the government the term "remaining demands" means the general estimate, 300,000 drums, but no authority is cited which supports this position. The government relies on In re Funsten, supra. There the Administrator held that where the amount of goods is "for all practical purposes, not ascertainable prior to the receipt of orders, the 'remaining demands' of the Government within the stockpile rule . . . can only be the orders the con-

tractor has then received but not filled." The contract in issue in the *Funsten* case contained neither a general estimate nor a specific delivery schedule. The Administrator stated that testing the "application of the 'stockpile rule' by facts which cannot be known until the work under the contract has been completed would deny to the contractor, during the performance of the work, the very information which he must have in order to determine whether he is complying with the Act's stipulations."

By a parity of reasoning, In re Funsten is applicable here. The government was expressly not obligated to purchase the 300,000 drums. It was obligated to purchase only under the specific schedule. Gulf States could only have known of its obligation under the Act and the stockpile rule from the government's obligation under the contract as that obligation arose from orders filed in accordance with the specific schedule.

The district court was faced within an either-or situation. Under the stipulations, it was agreed that the stockpile was sufficient under the rule if the amounts of the specific schedule constituted the remaining demands but insufficient if the estimate of 300,000 drums was controlling. We agree with the district court that the remaining demands under the contract were those amounts contained in the specific schedule.[4]

---

4. The stipulations provided in pertinent part:

It is stipulated that assuming coverage under the Act is found, if the government's contention is correct that in order to satisfy the requirements of the Stockpile Rule, Section 24 Rulings and Interpretations No. 3, issued by the Department of Labor under the Walsh-Healey Public Contract Act, defendant was required to have 300,000 fifty-five (55) gallon steel drums on hand at the time of the award of Contract No. DSA–700–68–D–0076, the total number of fifty-five gallon steel drums which defendant had on hand at Beaumont and South Houston did not total 300,-000 drums and the requirements of the Stockpile Rule would not be met.

It is further stipulated, however, that if defendant's contention is correct that in order to meet the requirements of the Stockpile Rule the defendant only had to have a sufficient number of fifty-five (55) gallon steel drums on hand at the time of the award of Contract No. DSA–700–68–D–0076 to meet the requirements of the delivery schedule set forth in such contract, that defendant did have a sufficient number of fifty-five (55) gallon steel drums on hand at Beaumont and South Houston to meet the requirements of the Stockpile Rule.

Given the stipulation, we also agree with the district court that the rule absolved Gulf States from paying overtime.[5]

Affirmed.

---

5. The portion of the stockpile rule which apparently allows replenishment during the course of the contract (§ 24(b)) has not been construed by the Administrator. Ordinarily it might well be proper subject-matter for the doctrine of primary jurisdiction. Cf. Far East Conference v. United States, 1952, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576. The government argues here that replenishment during the course of the contract to the extent necessary to supply the periodic demands of the contract schedule does violence to the rule of overtime for those working on government contracts during the course of such contracts. This argument is facially attractive but we, as did the district court, are deciding the case on the stipulated facts and issues and this appellate level suggestion was neither asserted nor preserved as an issue. It is not before us and our decision is not intended to forecast decision as to it, one way or the other. Here the stipulation is that the stockpile was sufficient to meet the delivery schedule and we have no problem of replenishment.