**STATE of Missouri ex rel. STIFEL, NICO-LAUS & COMPANY, INCOR-PORATED, Relator,**

v.

**Hon. Lewis W. CLYMER and Hon. William J. Marsh, Judges of the Circuit Court of Missouri, Sixteenth Judicial Circuit, Respondents.**

No. 58769.

Supreme Court of Missouri,
En Banc.

April 14, 1975.

Rehearing Denied May 12, 1975.

James E. Lockwood, Fred J. Petzold, Kansas City, Veryl L. Riddle, Thomas C. Walsh, St. Louis, for relator; Brenner, Lockwood & O'Neal, Kansas City, Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

S. Preston Williams, David Lee Wells, North Kansas City, Keith Wilson, Jr., Independence for respondents and party to be adversely affected.

FINCH Judge.

This is an original proceeding in prohibition wherein Stifel, Nicolaus & Company, Inc., as relator, seeks to prevent respondent judges from exercising jurisdiction over a case in which one Richard Stock seeks recovery of actual and punitive damages for alleged fraud and misrepresentation in connection with his purchase of securities.

Stock, as plaintiff, filed suit against relator in the Circuit Court of Jackson County on March 18, 1971. The petition alleged that during the period from June 1967 to November 1967 plaintiff was induced by fraud and misrepresentation on behalf of relator to invest in securities as to which relator was acting as a market-maker. The securities thereafter declined in value resulting in a loss. Stock seeks actual damages of $31,316.46, the loss incurred on the securities purchased, plus punitive damages of $150,000.

Following discovery procedures in which it was established that on September 17, 1968, Stock filed a petition in bankruptcy on which he subsequently was adjudged bankrupt, relator filed a motion for summary judgment. That motion alleged that Stock had no standing or capacity to sue because the cause of action for fraud and misrepresentation asserted by him had vested in the trustee in bankruptcy by virtue of the provisions of 11 U.S.C. § 110. In response thereto Stock filed an affidavit wherein he alleged his petition in bankruptcy was filed September 7, 1968; that he was discharged March 20, 1969; that prior to and during that period of time he had no knowledge or reason to believe that relator or its representatives had dealt with him in 1967 in any fashion other than honestly, fairly and in full accord with all fiduciary obligations due him; that he did not become suspicious of the activities of relator until he began to read in the public press in 1970 that the registered agent and representative of relator with whom he had dealt was being disbarred from acting as a broker or registered representative by the Securities and Exchange Commission; that he then discussed the situation with his counsel and began to check out records and information concerning his dealings with relator and its agent; and that it was thereafter that he discovered for the first time that he had been defrauded by relator and its agent and he then filed suit.

Relator's motion for summary judgment was overruled, after which it unsuccessfully sought prohibition in the Missouri Court of Appeals, Kansas City District. Relator then filed this proceeding and we issued our preliminary rule in prohibition. We now make it absolute.

█ It is well established that claims for fraud or misrepresentation are rights of action that are within the purview of 11 U.S.C. § 110(a)(5) and (6) (§ 70(a)(5) and (6) of the Bankruptcy Act.).[1] This

---

1. These subsections provide as follows:

"(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which

conclusion is supported by the analysis of the foregoing sections in 4A Collier on Bankruptcy § 70.28 (14th ed.1971), which states as follows:

"These clauses were revised by the 1938 Act with respect to the subject matter under discussion. In clause (5) of § 70a, the draftsmen inserted the phrase 'including rights of action', and also added the first proviso to the clause. In clause (6) the words 'or usury' were included. These changes served to clear up a certain confusion in the cases with regard to actions *ex delicto* and for usury. They also served to indicate that when the title to the bankrupt's rights of action is under consideration, both clause (5) and clause (6) must be considered together.

"Prior to 1938, the courts were sometimes puzzled as to the relation between the broad terms of § 70a(5), which made no specific reference to rights of action, and § 70a(6), which expressly dealt with certain of these rights. This perplexity was highlighted in cases involving actions *ex delicto* and for usury, hereafter discussed. But other situations arose where the right of action involved, while not expressly within clause (6), was obviously an assignable chose in action with all the aspects of a property right. In such cases the courts had little difficulty holding that the particular right of action passed under either § 70A(5) or a broad reading of § 70a(6), or a combination of both. This, of course, is now settled by the Act itself, and clauses (5) and (6) together blanket the field so far as rights of action are concerned."

Numerous decided cases support the foregoing analysis. In Dallas Cabana, Inc. v. Hyatt Corporation, 441 F.2d 865 (5th Cir. 1971), plaintiff, which had been through a bankruptcy proceeding, filed suit to recover for fraud in connection with transactions which had occurred prior to filing of the petition in bankruptcy. Plaintiff's action was dismissed on the basis that the cause of action for fraud belonged to the trustee in bankruptcy, the court saying at 866–67:

"We think the dismissal was properly granted. Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110(a), vests in the trustee, upon appointment and qualification, substantially all rights of action reposing in the bankrupt corporation as of the date the bankruptcy petition is filed. Clause (6) of the cited section specifically gives the trustee the rights of action for 'the unlawful taking or detention of or injury to' property of the bankrupt. Construing Clause (5) and Clause (6) together, it may be stated as a general rule that all rights of action for injury to the property of a bankrupt vest in his trustee and that only injuries to his person or reputation do not so vest. . . . [T]itle to all assets and/or property of the Bankrupt, Dallas Cabana, Inc., vested in the trustee in bankruptcy as of the date upon which the bankruptcy petition was filed. The reason for this title conversion was well stated in Gochenour v. Cleveland Terminals Bldg. Co., [118 F.2d 89 (6th Cir. 1941)] where the court said:

The object of the Bankruptcy Act is to benefit creditors by making all the pecuniary means and property available to their payment and in furtherance of this object, there passes to the trustee, not only what in strictness may be called the property of the bankrupt, but also those rights of action to which he was entitled for the purpose of recovering real or personal property, or damages respecting that which has been unlawfully diminished in value, withheld or taken from him."

In Benson v. Probst, 12 Utah 2d 348, 366 P.2d 700, plaintiff purchased land from de-

might have been levied upon and sold under judicial process against him, or otherwise sized, impounded, or sequestered . . .

(6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; . . . ."

fendant. Plaintiff subsequently was adjudicated a bankrupt but he did not schedule any claims against defendant in connection with the real estate transaction. Thereafter, plaintiff filed suit seeking recovery based on alleged deceit in connection with the purchase of the land from defendant. The suit was dismissed on motion of defendant, the court saying, 366 P.2d at 700:

"It appears unimportant whether the claim was scheduled or not, since the authorities uniformly determine that a claim like the one here becomes an asset in the hands of the trustee in bankruptcy, under the Bankruptcy Act simultaneously with the claimants' adjudication in bankruptcy, with plenary power to deal with it as an asset and as the trustee and the federal courts deem proper and which it is their duty to perform."

See also Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); Hooper v. Mountain States Securities Corporation, 282 F.2d 195 (5th Cir. 1960); Tamm v. Ford Motor Co., 80 F.2d 723 (8th Cir. 1935); Remmers v. Remmers, 217 Mo. 541, 117 S.W. 1117 (1909).

■ Respondents do not take issue with the foregoing conclusion as to the scope of § 110(a)(5) and (6). Instead they rely solely on the proposition that the claimed lack of knowledge as to fraud on the part of Stock until sometime in 1970 or 1971 necessarily meant that the cause of action was not in being at the time of the bankruptcy and that title thereto was not vested by operation of law in the trustee pursuant to § 110(a)(5) and (6). In other words, the critical issue is whether the cause of action accrued at the time of the alleged fraudulent 1967 acts on which the cause of action is based or whether it was not in being until the facts on which it was based were discovered subsequent to termination of the bankruptcy proceedings.

Such a question was answered by the Court in Unexcelled Chemical Corporation v. United States, 345 U.S. 59, 65, 73 S.Ct. 580, 583, 97 L.Ed. 821 (1953), when it said:

"A cause of action is created where there is a breach of a duty owed to plaintiff. It is that breach of duty, not its discovery, that normally is controlling."

A similar answer is given in 37 C.J.S. Fraud § 71, where it is stated:

"Aside from the question of when a statute of limitations begins to run, * * * a cause of action in deceit accrues immediately on the successful consummation of the fraud."

See also Garrett v. Perry, 53 Cal.2d 178, 346 P.2d 758 (Cal. banc 1959); Horne v. Cloninger, 256 N.C. 102, 123 S.E.2d 112 (1961).

Logic supports the conclusion stated in the foregoing authorities. A cause of action is given to redress the wrong inflicted by the wrongful conduct. That conduct gives rise to the *right* of action by the injured party. When suit is brought, it is to recover for the wrongful acts done by defendant in the past, not to recover for something that happens at the time of discovery. It is inaccurate to say that although wrongful acts have been committed there is no cause of action unless and until plaintiff discovers the acts.

The fact that the *right* of action does come into being at the time of the wrongful acts was recognized in Frazee v. Partney, 314 S.W.2d 915 (Mo.1958). In that case plaintiffs sought to recover for two wrongful deaths and the trial court ruled that they were barred by the one year limitation established by § 537.100 RSMo1949, V.A.M.S. That ruling was affirmed on appeal. One of the points disposed of was the argument by plaintiffs that the causes of action did not accrue until after plaintiffs learned the identity of defendant so that they could institute a suit against him.

The court overruled that contention, saying at 920:

"\* \* \* It may be stated as a general principle that, unless affected by statute, a cause of action 'accrues at the moment of a wrong, default or delict by the defendant and the injury of the plaintiff \* \* \* if the injury, however slight, is complete at the time of the act.' 1 Am.Jur., Actions, § 61, pp. 451–452."

Time of discovery, therefore, has nothing to do with the right of recovery but relates only to whether the cause of action is barred by the applicable statute of limitations. This fact was noted in Anderson v. Dyer, 456 S.W.2d 808 (Mo.App.1970). There the court considered the question of whether an action which sought on the basis of alleged fraud to set aside a default divorce decree rendered more than ten years previously was barred by the five year statute of limitations contained in § 516.120 RSMo 1969, V.A.M.S. Plaintiff asserted that her action should not be barred because the fraud was not discovered until ten years and three months after the default decree was entered, and she brought her suit approximately five months later. The court sustained plaintiff's position, saying at 811:

"Although the bipartition of Sec. 516.-120(5) has not been recognized in the reported cases, the uniqueness of the composition of this section may not be properly ignored. The initial segment of Sec. 516.120(5) is simply a statute of limitations which imposes a five year limit on the commencement of actions brought for relief on the ground of fraud; the concluding portion constitutes a ten-year artificial lacuna fixed by the legislature on the accrual of the cause of action, i.e., fraud actions are deemed not to accrue during the ten-year suspension period until the discovery of the fraud. As a general rule, a cause of action accrues the moment the right to commence the action comes into existence and the statute of limitations starts to run from that time. In the instant matter, Early Lee's right to set aside the divorce for fraud actually accrued when the decree was entered on June 23, 1958. However, for the purpose of determining when the five year statute of limitations would commence to run, the last part of Sec. 516.120(5) artifically deferred the accrual of Early Lee's cause of action until she discovered the fraud at any time within ten years of its perpetration. If the fraud was not discovered or discoverable during the ten-year hiatus provided by the legislature, then the cause of action would be deemed to have accrued at the termination of such period and the statute of limitations would commence to run from that time, thereby permitting a maximum of fifteen years for commencement of the suit."

The court in Anderson correctly recognized the difference between creating a *right* of recovery for fraudulent conduct and granting a deferral of the obligation to sue thereon within a specified period of time on the basis of a lack of knowledge of the facts which give rise to the right to sue. Section 516.120(5), which was the subsection of the statute of limitations applicable in Anderson (and is also the one with which we are concerned),[2] did not establish when the cause of action accrued or confer any right to sue. It is a purely procedural statute fixing the time in which suit must be filed and containing a saving

---

2. The portions of the statutes of limitations with which we are principally concerned are:

"Sec. 516.100—Civil actions, \* \* \* can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; \* \* \*.

"Sec. 516.120—Within five years: \* \* \* (5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

clause whereby, for the purpose of alleviating the hardship produced when a plaintiff has no knowledge of the fraudulent conduct, the period of time during which suit may be brought is tolled until the fraud is or should have been discovered or a period of ten years elapses, whichever occurs first. This formula demonstrates that the cause of action does not accrue from discovery of the fraud. If ten years elapse without discovery of the fraudulent acts, the statute of limitations begins to run and after five years the cause of action is barred, even if the fraud has not yet been discovered. It is significant that § 516.-120(5) does not say that a cause of action accrues or arises from discovery of fraudulent actions producing injury. It says that the cause of action is *deemed* to arise at that time. In other words, it says that *for the purpose of determining when the statute of limitations begins to run* on the cause of action for fraud, the cause of action *will be treated as accruing* when the fraud is discovered (or at the end of ten years, if that occurs first). As the court noted in Anderson, the legislature thereby artificially defers accrual of the cause of action but only for the purpose of tolling the period of limitation.

Having concluded that the cause of action which Stock now seeks to assert accrued in 1967, it follows that title thereto vested by operation of law in the trustee in bankruptcy pursuant to § .110(a)(5) and (6). Hence, Stock may not maintain suit thereon unless the trustee in bankruptcy abandons the cause of action. Hermsmeyer v. A.L.D., Inc., 239 F.Supp. 740 (D. Colo.1964); Constant v. Kulukundis, 125 F.Supp. 305 (S.D.N.Y.1954). The existence of the claim should be called to the attention of the bankruptcy court for appropriate attention.

█ Since we have determined that title to the asserted cause of action vested in the trustee in bankruptcy, plaintiff Stock is not the real party in interest and is not entitled to maintain the action. Respondents have no jurisdiction. Under those circumstances, prohibition is the proper remedy.

State ex rel. Lumbermens Mutual Casualty Co. v. Stubbs, 471 S.W.2d 268 (Mo. banc 1971); State ex rel. National Refining Co. v. Seehorn, 344 Mo. 547, 127 S.W. 2d 418 (1939); Dahlberg v. Fisse, 328 Mo. 213, 40 S.W.2d 606 (1931); State ex rel. Junior College District v. Godfrey, 465 S. W.2d 1 (Mo.App.1971).

Preliminary rule in prohibition is made absolute.

All concur.