**Eddie O. LUELLEN, Plaintiff,**

**v.**

**William HENDERSON, U.S. Postmaster General, United States Postal Service, Defendant.**

**No. 98–2581–DA.**

United States District Court,
W.D. Tennessee,
Western Division.

June 29, 1999.

Kathleen L. Caldwell, Taylor Halliburton Ledbetter Caldwell, Memphis, TN, for Eddie O. Luellen, plaintiff.

Harriett M. Halmon, U.S. Attorney's Office, Memphis, TN, Veronica Coleman, United States Attorney's Office, Memphis, TN, John C. Oldenburg, United States Postal Service, Law Department, for William J. William J. Henderson, Postmaster General, United States Postal Service, defendant.

## JURY TRIAL DEMANDED

DONALD, District Judge.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Before the court is Defendant's, William Henderson, U.S. Postmaster General, United States Postal Service ("USPS"), Rule 12(b)(1) motion to dismiss Plaintiff's, Eddie O. Luellen, request for judicial enforcement of a final Equal Employment Opportunity Commission ("EEOC") decision finding Defendant in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq. Defendant contends that the EEOC did not have jurisdiction to find that the USPS had discriminated against Plaintiff in violation of the Rehabilitation Act when it reassigned him to a new position because the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq., prevents the EEOC and this court from reviewing job suitability determinations made by the Secretary of Labor. Defendant further contends that this court lacks subject matter jurisdiction to enforce an EEOC decision that was rendered in violation of the FECA.

For the following reasons, the court grants Defendant's motion to dismiss for lack of subject matter jurisdiction.

## I. FACTS

In July 1985, Plaintiff suffered an on-the-job injury while working as a mailhandler for the United States Postal Service ("USPS"). As a result of this injury, Plaintiff was placed on work restrictions by his treating physicians. After filing a claim with the Office of Workers' Compensation Programs ("OWCP"), Plaintiff began receiving workers' compensation benefits under the FECA. In 1992, after Plaintiff had undergone successful rehabilitation, Defendant offered Plaintiff a position of employment that had been approved by the OWCP. This position, referred to by the parties as a Modified Mailhandler position, required Plaintiff to perform part-day duties in what was known as the "store." Later that year, Defendant informed Plaintiff that the work available in the store was insufficient and that he was being reassigned to another job that Defendant alleges was within the original rehabilitation job offer approved by the OWCP.

Plaintiff refused to report for the new assignment based on his averments that the position did not satisfy his medical limitations and that it had not been approved by his physician. Plaintiff contacted an Equal Employment Opportunity counselor and communicated his allegations of discrimination based on the job reassignment. On December 1, 1992, Plaintiff filed a formal complaint against the USPS, alleging that Defendant had violated the Rehabilitation Act by attempting to reassign him to a position inconsistent with his medical limitations.

As a result of Plaintiff's refusal to report to the new assignment, the OWCP terminated its payments of workers' compensation benefits to Plaintiff as of December 3, 1992. In March of 1993, OWCP mailed Plaintiff a notice informing him that his case had been remanded for further consideration and that his benefits would be restored retroactively and prospectively pending another decision from the OWCP. On May 7, 1993, the OWCP issued another decision finding that the position of Modified Mailhandler was suitable to Plaintiff's work capabilities. After Plaintiff failed to respond to a letter giving him fifteen days to accept the reassignment, the OWCP issued a July 23, 1993 ruling indicating

that Plaintiff's FECA benefits would be terminated.

Plaintiff requested a hearing before an EEOC Administrative Law Judge ("ALJ") regarding his Rehabilitation Act claim. After holding hearings on April 28 and August 22, 1994, the ALJ issued a decision finding that the USPS had engaged in disability discrimination by failing to reasonably-accommodate Plaintiff in the new work assignment given to him in October 1992. On November 22, 1994, Defendant issued a final agency decision rejecting the ALJ's recommended finding of discrimination. Plaintiff filed a timely appeal of Defendant's final decision with the Office of Federal Operations ("OFO") of the EEOC. In 1995, while Plaintiff's appeal was pending, the OWCP reversed its earlier determination that Defendant's job offer was suitable work, restored Plaintiff's FECA benefits and paid him $41,000 in retroactive workers' compensation benefits. On December 23, 1996, the OFO rendered a decision rejecting Defendant's decision and adopting the recommendations and analysis of the ALJ. On January 30, 1998, the EEOC denied Defendant's request to reconsider the OFO's December 23, 1996 decision.

## II. STANDARD

The appropriate standard to employ when reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction turns upon the nature of the motion. If the 12(b)(1) motion attacks the plaintiff's complaint on its face, the court is required to consider the allegations of the complaint as true. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996). When responding to a facial attack on subject matter jurisdiction, the plaintiff's burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir.1996). On the contrary, the plaintiff can "survive the motion by showing any arguable basis in law

for the claim made." *Id.* However, if the 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, apart from the pleadings, "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* Rather, the plaintiff then has the burden to prove the existence of jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 324 (6th Cir.1990). Moreover, when the Rule 12(b)(1) motion is a factual attack, the court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* at 325. Ultimately, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.* In the instant case, Defendant's motion to dismiss challenges whether subject matter jurisdiction exists in fact.

## III. DISCUSSION

### A. TIMELINESS OF DEFENDANT'S JURISDICTIONAL CHALLENGE

The court will begin its analysis by addressing the appropriateness and timeliness of Defendant's challenge to the court's subject matter jurisdiction over this case. In his Memorandum in Support of Plaintiff's Response to Defendant's Motion to Dismiss And/Or Summary Judgment, Plaintiff places much emphasis on Defendant's repeated failure to raise its challenge to the EEOC's jurisdiction over Plaintiff's Rehabilitation Act claim. Plaintiff relies upon these failures to reach his conclusion that the objection is untimely.

 Since it is appropriate for the court to examine documents beyond the pleadings to establish the existence of subject matter jurisdiction, the court notes that Defendant has submitted evidence supporting its contention that it did raise the jurisdictional issue with the EEOC.[1]

---

1. On November 22, 1995, Defendant sent a letter to William Bartlett, Director of the

EEOC's Compliance and Control division, that identified the Sixth Circuit's opinion in

However, even if Defendant had never raised the jurisdictional issue until now, that failure would not preclude the court from investigating the merits of Defendant's challenge. A federal court has an independent duty to insure it observes the constitutional and statutory limitations of federal judicial power at all times. This obligation is not time-sensitive, but continues throughout all stages of any litigation. *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir.1992) (stating "subject matter jurisdiction may be raised at any time, by any party or even sua sponte by the court itself"). The independent nature of this obligation prohibits the actions of parties from conferring subject matter jurisdiction where none would otherwise exist. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). As the Supreme Court said in *Insurance Corp. of Ireland*, "the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Id.* (citations omitted). Thus, a defendant cannot waive the right to challenge a federal court's subject matter jurisdiction over matters currently before it.

In the instant case, Defendant has not waived the right to challenge the EEOC's jurisdiction over Plaintiff's claim because that challenge is the basis for its attack upon federal subject matter jurisdiction. Here, Plaintiff is asking the court to enforce an EEOC ruling in its favor. However, if the FECA prohibits the EEOC

from exercising jurisdiction over Plaintiff's claim, this court would have no jurisdiction to enforce an EEOC ruling on a question that the Commission was statutorily prohibited from deciding in the first place. To do otherwise would cause this court to participate in an unlawful usurpation of power by a federal agency. Such concerns do not disappear simply because Defendant failed to raise them during the EEOC's administrative hearings. Accordingly, the court must evaluate the merits of Defendant's claim that the FECA barred the EEOC from deciding the question of whether Defendant's job offer constituted a reasonable accommodation under the Rehabilitation Act.[2]

## B. THE EFFECT OF THE FECA UPON PLAINTIFF'S REHABILITATION ACT CLAIM

■ The statutes in question in this motion to dismiss are the Rehabilitation Act and the FECA. The Rehabilitation Act was designed to "empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration", 29 U.S.C. § 701(b)(1), and to "ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities." 29 U.S.C. § 701(b)(2). Pursuant to these goals, the EEOC has enacted federal regulations requiring federal agencies to give full consideration to the hiring, placement and advancement of handicapped individuals and prohibiting such agencies from discriminating against qualified individuals with a physical or

---

*Woods v. Runyon*, 64 F.3d 664, 1995 WL 496655 (6th Cir.1995) as governing precedent and argued that the EEOC must affirm the Defendant's decision concerning its job offer to Plaintiff on the basis of that opinion. Defendant attached a copy of the *Woods* opinion to its letter to Bartlett.

2. Plaintiff argues that the court should enforce the EEOC ruling based on the Sixth Circuit's statement in *Haskins v. United States Dep't of the Army*, 808 F.2d 1192, 1199 (6th Cir.1987), that "a federal employee can request a federal court to enforce a favorable

EEOC order without having to risk a de novo review on the merits." That statement was made in reference to factual findings made by the EEOC. *See Haskins* at 1200 (stating "we agree that the factual findings underlying an administrative liability determination must be accepted by the district court if the plaintiff so requests"). Nothing in the *Haskins* opinion suggested that a federal district court cannot protect the statutory limits of subject matter jurisdiction by assessing the propriety of an exercise of jurisdiction by the EEOC.

mental handicap. *See* 29 C.F.R. § 1614.203(b). This prohibition against discrimination requires federal agencies to "make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified individual with handicaps" unless the accommodation imposes an undue hardship upon the agency. 29 C.F.R. § 1614.203(c)(1). The regulations define reasonable accommodation to include:

(I) Making facilities readily accessible to and usable by individuals with handicaps; and

(ii) Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

29 C.F.R. § 1614.203(c)(2).

The remedies available for an employee who has suffered discrimination on the basis of disability at the hands of a federal agency are governed by 29 C.F.R. § 1614.501 and include compensatory reinstatement, damages for any loss of earnings and a commitment from the agency that it will cease from the unlawful employment practice. *See* 29 C.F.R. § 1614.501(a).

The FECA is a federal statutory scheme providing workers' compensation benefits to civilian officers and employees of all branches of the Government of the United States. *See* 20 C.F.R. § 10.0. Among other things, the FECA delineates the rules for filing, processing, and paying claims for workers' compensation benefits. *See* 20 C.F.R. § 10.0. In the event of partial disability, the FECA provides that the partially disabled employee is entitled to receive monthly monetary compensation equal to 66⅔ percent of the difference between his monthly pay and his monthly wage-earning capacity after the beginning of his partial disability. *See* 5 U.S.C. § 8106(a) (1996). However, a partially disabled employee forfeits his right to this

monthly compensation if he either refuses to seek suitable work or refuses to accept suitable work after it has been offered to him. *See* 5 U.S.C. § 8106(c). The FECA entrusts the Secretary of Labor with the responsibility of making findings concerning all claims and making awards for or against compensation. *See* 5 U.S.C. § 8124(a). The FECA also gives the Secretary of Labor final and unreviewable authority to decide all questions of law and fact arising during the course of making compensation decisions. *See* 5 U.S.C. § 8128(b).

A brief outlining of the steps involved in the recovery of workers' compensation benefits under the FECA will illuminate the conflict raised in the instant case. If the injury suffered by the employee renders him unable to assume all of his former duties, the agency has a duty under the FECA to make reasonable accommodations to the employee's former job or offer a reasonable alternative position to allow the employee to resume his employment with the agency. *See* 5 U.S.C. § 8151(b); 20 C.F.R. § 10.507. The OWCP, an office within the Department of Labor, is responsible for determining if the accommodations made by the agency are sufficient to characterize the job offer as "suitable work", as used in 5 U.S.C. § 8106(c). In making this determination, the OWCP reviews the employee's physical limitations including all medical evidence concerning the employee's injury, the job offered by the agency as a reasonable accommodation of the employee's partial disability, and the employee's qualifications to perform that job. *See* 20 C.F.R. §§ 10.500, 10.618. If the modified position is deemed to be suitable work by the OWCP and the injured employee accepts this position, he can continue to receive compensation benefits for a percentage of the difference between his old salary and that received in the modified position. However, if the injured employee refuses to accept a modified position deemed suitable by the OWCP, he will not be entitled

to receive compensation benefits unless he can show just cause for such refusal. The question of the relationship between the Rehabilitation Act and the FECA arises when a federal employee, who has been denied compensation under the FECA and terminated from employment because of his refusal to accept work deemed to be suitable by the OWCP, files a Rehabilitation Act claim alleging that the modified job offer constituted a failure to reasonably accommodate his disability. Can a partially disabled employee state a claim for relief under the Rehabilitation Act in this scenario?

If this scenario did not implicate the FECA, the answer to this question would undoubtedly be "yes". However, the FECA gives considerable weight to the findings of the Secretary of Labor in compensation decisions, as evidenced by the following provision:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).

The OWCP's finding that a particular job constitutes suitable work falls within the ambit of those questions of law and fact made "in allowing or denying a payment under this subchapter" and therefore is unreviewable.[3] If the OWCP has already found a job offer to be suitable work under the FECA, can a district court entertain a Rehabilitation Act claim attacking that same job offer as an unreasonable accommodation of a disability?

Although a few circuit and district courts have addressed this question, no consensus has been reached as to whether § 8128 of the FECA bars Rehabilitation Act claims based on job offers that the OWCP has deemed to be suitable work. In *Taylor v. Dalton*, 61 F.3d 896 (3rd Cir.1995), the United States Court of Appeals for the Third Circuit affirmed without an opinion a district court's ruling that the FECA did not bar judicial review of a plaintiff's job assignments under the Rehabilitation Act. Although the district court acknowledged § 8128's bar against judicial review, it limited this bar to OWCP decisions to allow or deny FECA benefits. *Taylor v. Secretary of Navy*, 852 F.Supp. 343, 352 (E.D.Pa.1994). The district court noted that the Secretary of Labor's decisions concerning plaintiff's light duty work assignments were not at issue in the case before it. *Id.* Because the district court concluded that an evaluation of the plaintiff's Rehabilitation Act claim did not constitute a review of the Secretary of Labor's award of FECA benefits to the plaintiff, it found that § 8128 was inapplicable. *Id.* Rather, the district court characterized the plaintiff's claim under the Rehabilitation Act as a request for "additional and different relief."[4] *Id.*

On the other hand, in *Meester v. Runyon*, 149 F.3d 855 (8th Cir.1998), *cert. denied Meester v. Henderson*, — U.S. —, 119 S.Ct. 2018, 143 L.Ed.2d 1031 (1999), the Eighth Circuit held that § 8128 of the FECA barred a plaintiff from bringing a Rehabilitation Act claim based upon a job offer that had been approved as suitable

---

3. Under § 8145 of the FECA, the Secretary of Labor may "appoint employees to administer this subchapter; and delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter." 5 U.S.C. § 8145. Accordingly, the finality accorded to decisions of the Secretary of Labor applies equally to the findings of the OWCP as an office within the Department of Labor.

4. In arriving at this conclusion, the district court noted that the Third Circuit had already refused to construe § 8128 of the FECA as a bar against recovery under Title VII in *Miller v. Bolger*, 802 F.2d 660 (3d Cir.1986). *Taylor* at 352. The court found that the facts before it were sufficiently analogous to *Miller* to warrant a similar result.

work by the OWCP. *Meester* at 857. In *Meester*, the plaintiff had applied for and received workers' compensation benefits under the FECA for a work-related injury. Because the injury did not render the plaintiff totally disabled, the federal agency offered the plaintiff a limited duty position that was subsequently approved by the Department of Labor. The plaintiff accepted the job for fear of losing her FECA benefits, but later filed a suit against the agency based on the Rehabilitation Act. One of plaintiff's claims was an allegation that the job offer constituted a failure to reasonably accommodate her disability. The Eighth Circuit characterized the plaintiff's failure to accommodate claim as a request for a holding that the Department of Labor was wrong in directing plaintiff to accept the position offered by the agency. *Id.* The Eighth Circuit then concluded that "[s]uch a holding would contravene FECA's prohibition against judicial review of compensation decisions." *Id.* Although the Eighth Circuit affirmed the lower court's grant of partial summary judgment on plaintiff's accommodation claim, it qualified its holding by noting that the lower court had not held that all discrimination claims were barred under the FECA. *Id.* at 856. On the contrary, the lower court had allowed plaintiff's disparate treatment and retaliation claims under the Rehabilitation Act to proceed to trial. *Id.* Thus, the Eighth Circuit only held that a Rehabilitation Act claim was barred by the FECA "when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision." *See also Stubler v. Runyon*, 892 F.Supp. 228 (W.D.Mo.1994) (holding that the FECA barred plaintiff's discrimination claim under the Rehabilitation Act where her claim was predicated upon the same on-the-job injuries for which she had filed claims for FECA benefits); *Alexander v. Frank*, 777 F.Supp. 516, 524 (N.D.Tex.1991) (holding that the plaintiff's request for reinstatement under the Rehabilitation Act must be denied where the OWCP had determined that plaintiff was totally disabled and unable to perform any work).

Although the United States Court of Appeals for the Sixth Circuit has yet to discuss how § 8128 of the FECA impacts discrimination claims brought under the Rehabilitation Act, it did address the relationship between the FECA and Title VII in an unpublished opinion entitled *Woods v. Runyon*, 64 F.3d 664, 1995 WL 496655 (6th Cir.1995). In *Woods*, the plaintiff had appealed a district court's grant of summary judgment in the defendant's favor on her Title VII claims of employment discrimination. The plaintiff's Title VII claims were based on her allegations that 1) the OWCP had made an invalid job offer during the time of her disability, 2) the OWCP had illegally removed her from compensation status because of her refusal to accept the invalid job offer, and 3) she was later illegally terminated from employment with the United States Postal Service. In affirming the district court's grant of summary judgment, the Sixth Circuit began its analysis by construing § 8128 as precluding judicial review of OWCP determinations of law and fact regarding compensation for federal disability status. *Woods* at *1. Next, the Sixth Circuit found that the allegedly invalid job offer could not be considered as an adverse employment decision for purposes of Title VII because the OWCP had designated the job as valid and the position had been medically approved. *Id.* The Sixth Circuit stated that the plaintiff could not "collaterally attack the validity of the job offer in federal court" because of the conclusiveness of OWCP determinations under § 8128(b)(1). *Id.* Because evidence of an adverse employment decision is necessary to establish a prima facie case of Title VII employment discrimination, the Sixth Circuit concluded that the district court had been correct in granting summary judgment against the plaintiff. *Id.*

The Sixth Circuit's reasoning in *Woods* is applicable to the instant case. On May 7, 1993, the OWCP sent Plaintiff a letter

informing him that it had determined that the Modified Mailhandler position offered by the USPS constituted suitable work. *See* (Vinson Decl., Ex. F). Despite this OWCP ruling, the ALJ for the EEOC rendered a decision on September 30, 1994 finding that the job offer failed to reasonably accommodate Plaintiff's partial disability and therefore violated Plaintiff's rights under the Rehabilitation Act claim.[5] *See* (Pl.'s Compl., Ex. B). Thus, the ALJ found a violation of the Rehabilitation Act based upon a job offer that had already been deemed suitable work by the OWCP. Since the Sixth Circuit in *Woods* construed § 8128(b)(2) of the FECA as barring a Title VII claim attacking a job offer already determined to be suitable work by the OWCP, the ALJ's finding of a Rehabilitation Act violation was also barred by § 8128(b)'s declaration that the Secretary of Labor's findings of law and fact are "not subject to review by another official of the United States or by a court by mandamus or otherwise." *See* 5 U.S.C. § 8128(b)(2).

Moreover, under *Woods*, a plaintiff cannot show an adverse employment decision under Title VII based on a job offer that has been designated as suitable work by the OWCP. By the same reasoning, a plaintiff should not be able to show an unreasonable accommodation under the Rehabilitation Act based on a job offer that has also been designated as suitable work by the OWCP. This result obtains irrespective of the forum in which the plaintiff brings his claim. To do otherwise would allow plaintiffs to collaterally attack OWCP decisions in EEOC hearings and in district courts as well when those plaintiffs request judicial enforcement of EEOC rulings. *Woods* found that such collateral attacks were expressly prohibited by the language of § 8128(b) of the FECA. *Woods* at *1. Under the reasoning of *Woods*, the ALJ could not have found a violation of the Rehabilitation Act as a matter of law because the OWCP had already found that the modified job offered by the USPS was suitable work.

Plaintiff attempts to overcome § 8128(b)'s prohibition against collateral review of OWCP suitability decisions by noting that the OWCP's 1993 ruling was not final and that the EEOC's final decision was only issued after the OWCP had reversed its initial 1993 suitability ruling. The first argument is without merit because the OWCP had already made a determination as to the suitability of the job offer before the ALJ rendered its decision. Whether the OWCP decision was subject to a later appeal has little bearing upon § 8128(b)'s prohibition against review of the OWCP's job suitability determinations. Because "OWCP determinations of law and fact regarding compensation for federal disability status are not reviewable", *Woods* at *1, the OWCP's appeals process does not give the EEOC or district courts any more right to collaterally review OWCP determinations of law and fact than if no such process existed. The lack of finality of the OWCP's 1993 decision actually weakens Plaintiff's position because it indicates that the ALJ made a determination concerning the appropriateness of the job offer without first giving the Secretary of Labor an opportunity to exercise his exclusive right of final review as given to him by § 8128(b).

The court also rejects Plaintiff's second argument. Plaintiff contends that the final EEOC ruling, issued on December 23, 1996, "did not review the suitability, but merely *followed* the OWCP's ruling of unsuitability." *See* (Memo. in Supp. of Pl.'s Resp. to Def.'s Mot. to Dismiss and/or Summ.J., p. 5) (emphasis added). In other words, Plaintiff argues that the EEOC's final decision was rendered after the OWCP had reversed its initial job suitability determination and therefore should not be prohibited by § 8128(b) of the FECA. The fact that the EEOC's ultimate finding was consistent with the result reached in

---

5. This decision was not the EEOC's final decision but a recommended finding that was subsequently forwarded to the USPS for its independent consideration.

the OWCP's 1995 reversal of its initial job suitability determination does not mean that the decision falls outside the scope of § 8128(b). After the USPS issued its November 22, 1994 decision finding that the agency had not discriminated against Plaintiff on the basis of disability, Plaintiff filed an appeal to the EEOC on December 8, 1994. *See* Pl.'s Compl. at ¶ 19. At the time of this appeal, the OWCP's 1993 decision was the only determination that the Department of Labor had made concerning the suitability of the USPS's job offer to Plaintiff. That decision had found the agency's job offer to be suitable work under the FECA. Under *Woods,* the OWCP's determination that the job offer was suitable work made it unlawful for the EEOC to exercise appellate jurisdiction over the question of whether the job offer was a reasonable accommodation under the Rehabilitation Act. The timing of the EEOC's final decision did not cure its initial unlawful exercise of jurisdiction over a question that had already been decided by the OWCP.

This ruling does not give federal agencies free reign to commit egregious wrongs against those employees who are recipients of FECA benefits. The Sixth Circuit has recognized that § 8128(b)'s prohibition must yield to claims alleging that constitutional rights have been violated or that the Department of Labor exceeded the scope of its statutory authority. *See Owens v. Brock,* 860 F.2d 1363, 1367 (6th Cir.1988). In the instant case, no such allegations have been made. The court's ruling in this case also does not mean that recipients of FECA benefits can never bring discrimination claims under the Rehabilitation Act. This case only stands for the proposition that decisions concerning the suitability of federal agency job offers to partially disabled employees have been exclusively committed to the Secretary of Labor under the FECA and cannot be collaterally attacked or reviewed under the Rehabilitation Act.

Because the court finds that it has no subject matter jurisdiction over this case, there is no need to address Defendant's remaining contentions.

## IV. ORDER

Based on the foregoing, Defendant's Rule 12(b)(1) motion to dismiss Plaintiff's Rehabilitation Act claim for lack of subject matter jurisdiction is **GRANTED.**