Robert F. STONE, Plaintiff

v.

Elaine CHAO, Secretary, United States Department of Labor, Defendant

No. CIV.A. 02–30169–MAP.

United States District Court, D. Massachusetts.

Sept. 26, 2003.

Robert F. Stone, Conway, MA, Pro se.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Elaine Chao, Defendant.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION RE: RESPONDENT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket Nos. 12 and 24)*

PONSOR, District Judge.

The plaintiff has brought a number of federal statutory and constitutional claims against his former employer, the United States Department of Labor, through its secretary, Elaine Chao ("defendant"). Defendant filed a motion to dismiss, anchored mainly on jurisdictional arguments, and the plaintiff filed a motion for summary judgment. Both these motions were referred to Magistrate Judge Neiman, who recommended that the defendant's motion be allowed and the plaintiff's motion be denied.

Upon *de novo* review, the Report and Recommendation is hereby ADOPTED and defendant's motion to dismiss (Docket No. 12) is hereby ALLOWED. The plaintiff's motion for summary judgment (Docket No. 24) is hereby DENIED.

As Magistrate Judge Neiman's memorandum makes eminently clear, the court lacks subject matter jurisdiction over all of the plaintiff's supposed statutory and constitutional claims. To the extent that the complaint contains a negligence claim, the plaintiff failed to exhaust administrative remedies. Moreover, the lawsuit was brought beyond the period required by the applicable statute of limitations.

The plaintiff is unquestionably sincere in his sense of injury. However, it would be false charity to permit the continuation of a piece of litigation that suffers such glar-

ing and fatal defects. The clerk is hereby ordered to enter judgment for the defendant on all counts.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO RESPONDENT'S MOTION TO DISMISS and PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket Nos. 12 and 24)*

NEIMAN, United States Magistrate Judge.

Robert Stone ("Plaintiff"), an attorney who describes himself as proceeding "pro se," brings this multi-count complaint against his former employer, the United States Department of Labor ("DOL"), through its Secretary, Elaine Chao (hereinafter "Defendant"). Defendant's motion to dismiss, which raises principally jurisdictional-based arguments, along with Plaintiff's motion for summary judgment, have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons indicated below, the court will recommend that Defendant's motion to dismiss be allowed and that Plaintiff's motion for summary judgment be denied.[1]

## I. FACTUAL BACKGROUND

Much of the following background comes directly from the Second Amended Complaint. However, since the gravamen of Defendant's motion to dismiss alleges lack of subject matter jurisdiction, *see* Fed. R.Civ.P. 12(b)(1), certain facts are properly derived from other documents. *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir.2002) ("[T]he court may consider ... materials [outside the pleadings] on a Rule 12(b)(1) motion.").

Plaintiff was employed by the Occupational Safety and Health Administration ("OSHA") within the DOL when, in 1986, he suffered work-related injuries. (See Original Complaint ¶¶ 8, 9; Second Amended Complaint ¶¶ 8–11.) On March 29, 1988, Plaintiff filed a claim for injury benefits under the Federal Employees' Compensation Act ("FECA"). (Docket No. 14 ("Def.'s Brief"), Ex. A, Declaration of Edward Duncan ("Duncan Dec."), ¶ 2.) In 1989, the Office of Workers' Compensation Programs ("OWCP") accepted Plaintiff's claim and began paying FECA benefits. (*Id.*)

On May 24, 1993, however, the DOL offered Plaintiff a modified duty position in OSHA's Hartford office and on June 14, 1993, OWCP certified the job as suitable. (*Id.* ¶¶ 3, 4.) Plaintiff rejected the offer claiming that: (1) he did not feel physically capable of performing the required duties; (2) the offer posed a financial hardship; (3) the job interfered with his son's special education; (4) his wife opposed the offer; and (5) the offer was "unreasonable." (*Id.* ¶ 5 and Ex. 5 thereto.)

On September 13, 1994—following two medical evaluations and a report from Plaintiff's treating physician—OWCP informed Plaintiff that his objections were unacceptable. (*Id.* ¶¶ 6, 7.) OWCP gave Plaintiff fifteen days within which to accept the Hartford position or lose his FECA benefits. (*Id.* ¶ 7.) When Plaintiff failed to submit a timely response, OWCP notified him, via a decision dated October 6, 1994, that it was terminating his FECA benefits. (*Id.* ¶ 8.) In its decision, OWCP rejected Plaintiff's objections to the Hartford job. (*Id.*, Ex. 8 thereto.)

---

1. A third motion, Plaintiff's motion for leave to file a Second Amended Complaint, was referred to this court for determination. The court has allowed that motion by margin no-

tation and, therefore, treats Defendant's motion to dismiss as targeting the Second Amended Complaint.

Plaintiff alleges that, in 1993 and 1994, several OWCP officials, in the course of evaluating Plaintiff's complaints, exhibited an "illegal" bias against him. (See Second Amended Complaint ¶¶ 14, 23–28.) Plaintiff also alleges that a DOL letter to him dated March 27, 1995, demonstrates that Defendant's agents threatened him with "unwarranted ... criminal and adverse personnel actions." (*Id.* ¶ 29.)

## II. *Procedural Background*

Following OWCP's October 6, 1994 decision, Plaintiff filed an administrative appeal and a hearing was held on April 27, 1995. (See Duncan Dec., Ex. 9.) In a decision dated July 18, 1995, an OWCP hearing examiner affirmed the termination of FECA benefits, finding that Plaintiff's reasons for rejecting the Hartford job were unacceptable. (*Id.* ¶ 9 and Ex. 9 thereto.) Plaintiff appealed that decision to the Employee Compensation Appeals Board ("ECAB") (See *id.*, Ex. 10.)

In the meantime, between July 21, 1993 and March 16, 1995, Plaintiff filed five separate complaints with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Brief, Ex. B.) Those complaints also challenged various aspects of the processing of his worker's compensation claim and the termination of his FECA benefits and sought a lump-sum award of FECA benefits. (*Id.*) Plaintiff's five EEOC complaints were each denied in written decisions between February 4, 1994, and November 16, 1996. (Def.'s Brief, Exhibit D.)

In February of 1997, Plaintiff and the DOL entered into a settlement agreement. (Def.'s Brief, Ex. C.) In essence, the agreement stated that, in exchange for $35,000 and $15,000 in attorney's fees, Plaintiff would withdraw all claims arising out his employment with the DOL except for "[FECA] claims presently pending before the [ECAB], or claims involving solely the [OWCP]." (*Id.*)

On July 25, 1997, the ECAB upheld OWCP's decision. (Duncan Dec., Ex. 10.) In its own detailed decision, the ECAB itself addressed, and rejected, Plaintiff's specific objections to the Hartford job. (*Id.*)

Over three years later, on October 9, 2000, Plaintiff requested reconsideration of the ECAB decision, arguing that a new "heart condition" prevented him from returning to work. (*Id.* ¶ 11 and Ex. 11 thereto.) On December 4, 2000, OWCP denied the request as untimely and as failing to establish clear evidence of error. (*Id.* ¶ 12 and Ex. 12 thereto.) On December 19, 2000, Plaintiff renewed his request for reconsideration, which OWCP denied on March 5, 2001. (*Id.* ¶¶ 13, 14 and Exs. 13, 14 thereto.) On August 5, 2002, the ECAB affirmed OWCP's denial, finding that Plaintiff's October 9 and December 19, 2000 requests for reconsideration were untimely and that he had failed to establish clear evidence of error. (Duncan Dec. ¶ 15 and Ex. 15 thereto.)

In the interim, Plaintiff moved the EEOC for reconsideration of its dismissals. On July 31, 2002, the EEOC denied Plaintiff's motion for reconsideration. (Def.'s Brief, Ex. F.) In so doing, the EEOC stated as follows:

After a careful review of the record, we find that [Plaintiff] failed to demonstrate that the ... decision[s] involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the practices, procedures or operations of the agency.... The proper forum for [Plaintiff] to have raised challenges to actions which occurred during OWCP's processing of his worker's compensation claim was before the OWCP.

(*Id.* at 3.) This ruling, described as the EEOC's "final decision," also noted that Plaintiff would have ninety days within which to file an appropriate legal action. (See *id.*)

Plaintiff initiated this lawsuit on October 22, 2002. The Second Amended Complaint lists eight claims. Count I alleges a violation of the Rehabilitation Act. Count II alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), although the parties have treated Count II as another Rehabilitation Act claim. *See Amendola v. Henderson,* 182 F.Supp.2d 263, 276 (E.D.N.Y.2001) (in the context of federal employment, "Section 794a of the Rehabilitation Act expressly adopts the anti-retaliation provisions of Title VII"). Counts III through VII are federal constitutional claims: Count III alleges a denial of "due process," Count IV alleges "infringement on personal liberty," Count V alleges "intrusion upon personal seclusion," Count VI alleges "infringement on property rights," and Count VII alleges that Defendant violated the Sixth Amendment by "exercising rights reserved to the states." Count VIII alleges "negligent supervision and retention."

### III. DEFENDANT'S MOTION TO DISMISS

Defendant's motion to dismiss arises principally under Rule 12(b)(1), but also impliedly invokes Rule 12(b)(6). Rule 12(b)(1) empowers a party to seek dismissal of an action for "lack of jurisdiction over the subject matter" and Rule 12(b)(6) allows a complaint to be dismissed for "fail[ing] to state a claim upon which relief can be granted." Both rules require the court to construe all of the complaint's allegations in favor of Plaintiff, the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994).

The court will first consider Defendant's jurisdictional arguments. *See Metropoli-* *tan Prop. & Cas. Sur. Co. v. Shan Trac, Inc.,* 324 F.3d 20, 22 (1st Cir.2003) (noting that objection based on subject matter jurisdiction "takes priority over all others") (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210, (1998)). It will then analyze Defendant's main Rule 12(b)(6) argument, that Plaintiff's claims must be dismissed on statute of limitations grounds. In the end, the court will recommend that the entire complaint can be dismissed on either basis.

### A. JURISDICTION

■ Defendant's jurisdictional argument with respect to Plaintiff's single tort claim can be dealt with in short order. In essence, the court agrees with Defendant that Count VIII, alleging negligent supervision and retention, should be dismissed because Plaintiff admittedly failed to file a required Federal Tort Claims Act ("FTCA") administrative claim prior to filing suit. *See Richman v. United States,* 709 F.2d 122, 124 (1st Cir.1983) (observing that FTCA filing requirement is jurisdictional and cannot be waived).

■ As for Plaintiff's Rehabilitation Act and constitutional claims, Defendant asserts that FECA precludes judicial review of these causes of action. For the following reasons, the court believes that this assertion has significant force and, therefore, that the remainder of the complaint should also be dismissed on jurisdictional grounds.

FECA provides, in pertinent part, that "[t]he action of the Secretary . . . in allowing or denying a [FECA] payment . . . is— (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a Court by mandamus or otherwise." 5 U.S.C. § 8128(b) (hereinafter "section

8128(b)"). According to the Supreme Court, "[i]n enacting [FECA] Congress adopted the principal compromise ... commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 194, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983) (citing legislative history).

Relying on numerous decisions applying FECA's "unambiguous and comprehensive" bar of judicial review, Defendant argues that "[t]he court lacks subject matter jurisdiction because ... [P]laintiff's complaint is nothing more than a thinly-veiled effort to collaterally attack the termination of his FECA benefits." (Def.'s Brief at 7.) For his part, Plaintiff, citing two decisions from the District of Massachusetts, contends that his Title VII and Rehabilitation claims, Counts I and II, are not precluded by section 8128(b). Citing *Paluca v. Sec'y of Labor,* 813 F.2d 524 (1st Cir.1987), Plaintiff also argues that the court can maintain jurisdiction over constitutional claims—such as the ones he purportedly presents in Counts III through VII—with respect to Defendant's actions in administering FECA.

As for Counts I and II, neither of the Title VII or Rehabilitation Act decisions Plaintiff cites—in both instances, incorrectly—says anything about the FECA jurisdictional bar. *See Owens v. West,* 182 F.Supp.2d 180, 187 (D.Mass.2001) (Gertner, J.); *Cagan v. U.S. Postal Service,* Civil Action No. 81–0032–F, 1982 WL 58, at *2 n. 1 (D.Mass. Dec. 13, 1982) (Freedman, J.). Rather, it appears that Counts I and II are strikingly similar to *Meester v. Runyon,* 149 F.3d 855 (8th Cir.1998), in which the Eighth Circuit dismissed a disguised FECA claim.

Like here, the plaintiff in *Meester* alleged that a position offered to her and certified as suitable by OWCP failed to reasonably accommodate her handicap. *See id.,* 149 F.3d at 856. The court, however, upheld summary judgment, stating that the Rehabilitation Act cannot be used as a vehicle for a FECA-benefits claim:

> [The plaintiff] is essentially asking us to hold that the Department of Labor was wrong in directing her to accept this position. Such a holding would contravene FECA's prohibition against judicial review of compensation decisions.... We will not allow [the plaintiff] to use the Rehabilitation Act to circumvent Congress' intent.

*Id.,* 149 F.3d at 857 (citations omitted). *See also Nicastro v. Runyon,* 60 F.Supp.2d 181, 186 (S.D.N.Y.1999) (holding that plaintiff cannot get around FECA's prohibition on judicial review "by collaterally attacking a denial of FECA benefits as retaliatory"); *Luellen v. Henderson,* 54 F.Supp.2d 775, 781 (W.D.Tenn.1999) (stating that decisions that are "exclusively committed to the Secretary of Labor under the FECA ... cannot be collaterally attacked or reviewed under the Rehabilitation Act").

■ The court believes that Plaintiff's constitutional claims (Counts III through VII) are also doomed by the FECA jurisdictional bar. To be sure, federal courts can maintain jurisdiction over certain constitutional challenges to FECA decisions, *Paluca,* 813 F.2d at 526–27, *i.e.,* those properly attacking the FECA process itself. However, such challenges may not be "attenuated." *See id.* at 526. Stated another way, a "garden-variety claim for benefits" to which a constitutional label is affixed is "plainly barred by" section 8128(b). *Czerkies v. U.S. Dep't of Labor,* 73 F.3d 1435, 1443 (7th Cir.1996). *See also Sugrue v. Derwinski,* 26 F.3d 8, 11

(2nd Cir.1994) (noting that a federal court does not "acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms"); *Rodrigues v. Donovan,* 769 F.2d 1344, 1348 (9th Cir.1985) ("a mere allegation of a constitutional violation" is not sufficient to avoid preclusion of review under section 8128(b)).

Here, Counts III through VII of the Second Amended Complaint appear to be nothing more than "garden variety" FECA challenges cloaked in constitutional raiment. The clearest evidence supporting that conclusion is the relief Plaintiff seeks within the body of each so-called "constitutional" cause of action, to wit, "loss of pay, loss of retirement benefits, loss of social security benefits, and other terms and conditions of employment." (Second Amended Complaint ¶¶ 87, 91, 94, 98 and 102.)

To be sure, the "wherefore" line of the Second Amended Complaint, submitted after Defendant filed her motion to dismiss, now claims to seek only the "ordering of a fair hearing" under Counts III through VIII, (Compare Second Amended Complaint at 23 with Amended Complaint (Docket No. 11) at 21 (in which Plaintiff seeks "[d]amages under each count of the Complaint including, but not limited to, loss of pay . . . resulting from emotional stress")), and Plaintiff confirmed as much at oral argument. To the court, however, it appears that Plaintiff—confronted with Defendant's FECA-based, jurisdictional argument—is belatedly trying to morph his constitutional counts from "benefits" causes of action into requests for injunctive relief. This is an unacceptable form of artful pleading, particularly given Plaintiff's argument in his motion to amend that he was only seeking to amend the complaint to correct a misspelling and to "con-

form with the evidence produced in discovery." (Docket No. 22 at 1.)

There is other evidence that the constitutional claims are disguised FECA challenges. For example, Count IV, alleging "infringement on personal liberty," seems directed at OWCP's determination that Plaintiff's concern about his son's special education was not an acceptable reason for rejecting the job offer. (See Second Amended Complaint ¶ 89.) Similarly, Count V, alleging "intrusion upon personal seclusion," and Count VII, alleging that Defendant's denial of FECA benefits interfered with rights reserved to the states, also appear to fall within section 8128(b).[2]

In sum, the court views Plaintiff's Rehabilitation Act and constitutional causes of action as impermissible backdoor attempts to present a FECA challenge for which there is no judicial review. The court also finds that Plaintiff failed to administratively exhaust his tort claim. Accordingly, given the evident lack of subject matter jurisdiction, the court will recommend that Defendant's motion to dismiss be allowed pursuant to Rule 12(b)(1). *See also* Fed. R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

### B. STATUTE OF LIMITATIONS

■ Leaving nothing to chance, Defendant argues that, even assuming that the court has jurisdiction over the complaint, Plaintiff's claims are barred by the limitations periods of 28 U.S.C. § 2401 (hereinafter "section 2401"). In analyzing this argument under Rule 12(b)(6), the court is limited to the facts alleged in the complaint and the reasonable inferences derived therefrom, viewing both in a light

---

**2.** At any rate, as described below, even viewing the constitutional claims as raising an appropriate attack on the FECA process, they fail on statute of limitations grounds.

most favorable to Plaintiff. *See Coyne v. City of Somerville,* 972 F.2d 440, 443 (1st Cir.1992). For the following reasons, the court agrees with Defendant that section 2401 bars all eight of Plaintiff's claims.

According to section 2401, a tort claim against the government (such as Count VIII) must be filed "within two years after such claim accrues." 28 U.S.C. § 2401(b). Section 2401 also provides that nearly every other claim against the government (such as the Rehabilitation Act and constitutional claims made in Counts I through VII) must be brought "within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Defendant argues that all of Plaintiff's causes of action are barred by section 2401 insofar as they "relate[ ] to actions that took place in 1993 and 1994." (Def.'s Brief at 22.) Plaintiff's response is that he filed his complaint within ninety days following the EEOC's final action and that this ninety day window is the *only* limitations period with which he had to comply.

In the court's view, Plaintiff misunderstands the nature of Defendant's statute of limitations argument. As Plaintiff is well aware, each substantive allegation in the Second Amended Complaint occurred well prior to October 22, 1996, six years before he filed suit. Indeed, most of the challenged conduct—be it benefits denials or alleged malfeasance in the OWCP administrative process—occurred nearly a decade ago, and even the most recent "illegal" act—the "threat" that allegedly occurred on March 27, 1995—is untimely by at least seventeen months. Put bluntly, this is the very type of stale case that section 2401 was enacted to address.

Moreover, the fact that Plaintiff voluntarily chose to return to the EEOC many years after the alleged violations is of no moment. The First Circuit has made clear that where an administrative route is "permitted but not required, ... the cause of action accrues [pursuant to 28 U.S.C. § 2401] at the time of the injury," not when the administrative proceedings were exhausted. *Trafalgar Capital Assocs., Inc. v. Cuomo,* 159 F.3d 21, 36 (1st Cir. 1998) (citing *Unexcelled Chemical Corp. v. United States,* 345 U.S. 59, 65, 73 S.Ct. 580, 97 L.Ed. 821 (1953), and *Brighton Village Assoc. v. United States,* 52 F.3d 1056, 1060 (Fed.Cir.1995)). As described, the "injury" in this matter occurred long ago. Moreover, there can be no question but that the EEOC route Plaintiff chose was permissive only; as the agency itself stated, the "proper forum" for Plaintiff's claims was not the EEOC, but "the OWCP." Thus, Plaintiff's causes of action accrued well outside the applicable limitations periods. Accordingly, the court will recommend that, even if jurisdiction exists, the complaint ought to be dismissed on statute of limitations grounds.[3]

### IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Because the court is recommending that Defendant's motion to dismiss be allowed, it will further recommend that Plaintiff's motion for summary judgment be denied. Even if the action could somehow escape dismissal, the court would still recommend denying Plaintiff's motion for summary judgment as premature. Other than the informal exchange of documents, no discovery has occurred and an initial scheduling conference has not been held.

---

**3.** Defendant also argues that (1) the doctrine of "sovereign immunity" strips the court of jurisdiction over Plaintiff's Rehabilitation Act and constitutional claims, and (2) the constitutional causes of action cannot be considered implied causes of action for damages under

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Insofar as the court believes ample grounds exist to dismiss the instant complaint, it has not analyzed these alternative theories.

### V. Conclusion

For the reasons stated, the court recommends that Defendant's motion to dismiss be ALLOWED and that Plaintiff's motion for summary judgment be DENIED.[4]

April 8, 2003.

---

**4.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.